## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | Case No. 1:21CR00022 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **BOBBY WAYNE HAISLIP,** | ) | JUDGE JAMES P. JONES |
| | ) | |
| Defendant. | ) | |

*Jennifer R. Bockhorst, Assistant United States Attorney, Abingdon, Virginia, for United States; Bobby Wayne Haislip, Defendant Pro Se.*

Bobby Wayne Haislip, previously sentenced by this court, has filed a Motion Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, alleging that he was deprived of effective assistance of counsel, that his sentence was longer than necessary, and that the court failed to adequately consider an argument made at sentencing. The United States has filed a Motion to Dismiss, and the defendant has failed to file a timely response. For the reasons stated, I will grant the Motion to Dismiss and dismiss the § 2255 motion.

## I.

In April 2021, a grand jury of this court returned a six-count Indictment against Haislip, charging him with drug and weapons offenses. Haislip pleaded guilty to two counts pursuant to a written plea agreement — Count One, which charged possession with intent to distribute and distributing 50 grams or more of

methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and Count Four, which charged possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c).  Prior to the change-of-plea hearing, the government filed an Information pursuant to 21 U.S.C. § 851, giving notice that it sought increased punishment under § 841(b)(1)(A), by reason of Haislip's two prior serious violent felony convictions, two Virginia robbery convictions (§ 841 enhancement).

The change of plea hearing was held on August 23, 2021.  During the Rule 11 colloquy, the court questioned Haislip about his mental health.  Haislip, under oath, indicated that he had been treated for anxiety and depression and that he had been hospitalized for mental health issues for a week in 2018.  He reported that he was taking medicine for his conditions, but that those medicines did not affect his ability to understand the proceedings.  He reported that he had no other health issues other than high blood pressure, indigestion, and ulcers.  Haislip's counsel reported that he had no doubt as to Haislip's competency.  Haislip affirmed that he had an adequate opportunity to discuss the plea agreement with his attorney and that he was fully satisfied with his attorney's representation.

The government then summarized the terms of the plea agreement, including that it would only seek the § 841enhancement for only one of the prior Virginia robbery convictions, which would result in a lower mandatory minimum of 15 years,

if Haislip complied with his obligations under the plea agreement.  The government highlighted, however, that Haislip agreed that both robbery convictions were valid predicates for the § 841 enhancement.

The government also noted that by signing the agreement, Haislip understood that the § 924(c) offense, Count Four, came with a five-year mandatory minimum to be served consecutively to any other sentence.  The government stated that the agreement included appeal and collateral attack waivers.  Haislip affirmed that the summarized terms were included in his plea agreement as he understood it.

The court then assured that no one had made any promises, threats, or otherwise attempted to force Haislip to plead guilty.  Haislip confirmed that to be correct.  The court reviewed both charges to which Haislip was pleading guilty, and indicated, in relevant part, that if the case went to trial, the government would have to prove that Haislip used or carried a firearm in relation to a drug trafficking crime. Haislip affirmed that he understood and that he was pleading guilty because he was in fact guilty of both counts.

The government summarized the facts it would be prepared to prove at trial, including that Haislip was in a car during a July 2020 traffic stop when law enforcement found two kilograms of methamphetamine and two loaded handguns, that law enforcement located a small amount of methamphetamine and other drug distribution paraphernalia and a pistol at Haislip's and a co-defendant's residence a

few weeks later, and that Haislip and his co-defendant were stopped again in November 2020, when law enforcement found approximately 177 grams of methamphetamine and a .38-caliber revolver in the vehicle.  Haislip's counsel indicated that Haislip accepted full responsibility for the November 2020 conduct and noted that he only disputed the factual allegations related to the charges to be dismissed under the plea agreement.

After the plea hearing but before sentencing, on November 15, 2021, the court received a pro se letter from Haislip, in which Haislip accused his attorney of lying to him about the government's ability to use the earlier state robbery convictions as predicates for the § 841 enhancement and for allegedly stating that Haislip would receive a life sentence if he did not accept the plea deal.  Haislip specifically contended that "the statute of limitations prohibit[ed] the use of prior felony convictions that are 15 years old or older."  Letter 1, ECF No. 67.  Haislip accused his trial counsel of advising him to accept an "illegal plea for his own personal gain and int[e]rest."  *Id.* at 2.  However, Haislip also reaffirmed his guilt in the letter — "I am not denying my guilt on count(s) 1 and 4 of my indictment."  *Id.*  That same day, Haislip's attorney moved to withdraw.  A few days later, Haislip moved to withdraw his plea agreement, citing to many of the same concerns regarding his attorney's performance that he brings in his instant § 2255 motion.

On November 22, 2021, the government moved to dismiss the § 851 Information triggering the § 841 enhancement and also moved to amend the Indictment to remove the language citing to Haislip's prior state robbery convictions. A day later, the court received a pro se motion for a mental health evaluation, in which Haislip cited history of bipolar disorder, depression, anxiety, paranoia, and substance abuse disorder.

Prior to sentencing, the court took up these pending motions.   The court granted the government's motions requesting dismissal of the Information and amendment of the Indictment associated with the § 841 enhancement.  Before doing so, the government noted that it did not bring such motions because of the statute of limitations argument made by Haislip in his pro se letter.

The court then inquired about Haislip's pro se letter and motion and counsel's motion to withdraw.   Counsel represented that he believed he and Haislip had reconciled their differences.   He noted that Haislip had objections to the drug weight attributed to him, but that he no longer desired to withdraw his guilty plea.  The court asked Haislip if he wanted to withdraw all of his pro se requests, including the one requesting a new attorney, the one in which he sought to withdraw his guilty plea, and the one in which he asked for a mental evaluation.   Haislip confirmed that he did want to withdraw these motions.  The court then questioned Haislip to ensure he no longer wished to discharge his attorney:

> The Court:  I want it on the record whether you wish to discharge – you wish me to discharge your lawyer.  Do you want to keep Mr. Jessee or not?
>
> Defendant Haislip:  At this time, yes, Your Honor.
>
> The Court:  No, it's not at this time.  Mr. Jesse is going to be your lawyer unless and until I remove him.
>
> Defendant Haislip:  That's fine with me.

Nov. 23, 2021, Hr'g Tr. 7, ECF No. 116.  The court confirmed again with Haislip that he no longer wanted to withdraw his guilty plea.  The court instructed Haislip that his attorney could look into a mental evaluation and "if he believes that you need a psychiatric evaluation, he will file an appropriate motion in that regard." *Id.* at 8.  Haislip agreed, and the court dismissed all of Haislip's pro se motions.

On January 17, 2022, Haislip filed another motion to withdraw his guilty plea. This time, the motion was filed by counsel, and it cited "an allegation of actual innocence."  Mot. to Withdraw 1, ECF No. 90.  Counsel also stated in the motion that Haislip "instructed undersigned counsel to request leave to withdraw as counsel" in the case.  *Id.*  Counsel filed a separate motion the same day noting that there was a breakdown in communications with Haislip.  One day later, Haislip, by counsel, moved to withdraw his January 17, 2022, motions.

At sentencing on January 21, 2022, the court inquired about the January motions.  Counsel explained that Haislip requested that he withdraw as counsel when they met to review his Presentence Investigation Report (PSR), but that the

following day, he received communications from one of Haislip's family members who advised that Haislip wanted to withdraw both motions.  The court asked Haislip directly about his change of heart.  Haislip explained:

> I just had a mid breakdown.  Overwhelmed.  I'm on medication and stuff, and it was totally all me.  I wasn't comprehending exactly what he was trying to explain to me.  And I just, I don't know, I felt like something just wasn't right and I just wanted to have a do over.  I understand that.  I talked to my mom and stuff, and we prayed about it.  I just want to go ahead on and just go ahead and proceed, especially when he's trying to do what's best for me I guess, you know.

Sent'g Hr'g Tr. 3–4, ECF No. 115.  Haislip affirmed that he no longer wished to withdraw his guilty plea, that he had spent adequate time with his attorney going over the PSR, that he did not need to confer with his attorney any further, that he was satisfied with his attorney's representation, and that he was ready to proceed with sentencing.

After hearing testimony from the case agent, as well as defense counsel's objections to the PSR related to the drug weight attributable to Haislip and the relevant criminal history scoring, the court adopted a guideline scoring of a total offense level of 33, incorporating a three-level reduction for acceptance of responsibility, and a criminal history category of III, with a resulting advisory sentencing range of 168 to 210 months as to Count 1.  The court also recounted the mandatory minimum sentence of 60 months, to be run consecutive, as to Count 4, as was noted in the plea agreement and highlighted at the plea hearing.

The case agent then returned to the stand and testified that Haislip's cooperation was less extensive than a defendant in a related case and explained that Haislip was a major distributor of methamphetamine and firearms trading compared to his co-defendant, who received a relatively short sentence. The government argued that Haislip should receive a sentence at the high end of the guidelines range. Defense counsel argued, in part, that the related-case defendant was "just as culpable, if not more culpable" and only received 120 months, and that Haislip's co-defendant only received 48 months. *Id.* at 52. Defense counsel asked the court to consider the so-called "disparity in sentencing." *Id.* at 53. The court sentenced Haislip to a low-end guideline sentence of 168 months on Count One plus the required 60 months on Count Four.

Shortly after sentencing and within the appeals period, Haislip filed a pro se motion to extend his time to appeal. The court construed the motion as a timely Notice of Appeal. The court of appeals dismissed the appeal, finding that Haislip "knowingly and voluntarily waived his right to appeal and that the issue Haislip seeks to raise on appeal falls squarely withing the scope of his wavier of appellate rights." Order at 1, *United States v. Haislip*, No. 22-4062, (4th Cir. June 28, 2022), ECF No. 120.

Thereafter, Haislip timely filed the present § 2255 motion. He argues that his trial counsel was ineffective in the following ways:

Ground One.  Failing to file an appeal after being directed to do so by Haislip;

Ground Two.   Lying and conspiring with the United States attorney to convince Haislip to accept the "illegal plea," Def.'s Mot. 14, ECF No. 127, and by telling Haislip that he would receive a life sentence if he did not accept the plea;

Ground Three.  Continuing to conspire with the government and counsel did not know or should have known that the § 841 enhancement predicates could not be used because they were more than 15 years old;

Count Four.  Counsel knew or should have known that "Document 55 was disturbed by the government making Document 55 defaulted" and counsel conspired with the government "to help deliver Defendant to an illegal plea," *id.* at 15;

Ground Five.   Failing to investigate and calling character witnesses for sentencing;

Ground Six.  Counsel failed to explain that Haislip was not guilty of Count Four because there was insufficient evidence to show that Haislip actively employed a firearm in the commission of his drug offense;

Ground Seven.  Counsel should have guided him "through his due process" and taken the time "to see through the government's false charges" and object to such charges, and because counsel "misinformed, misdirected, and

instructed" Haislip to enter into a guilty plea as to Count Four "to a <u>defaulted plea agreement that was disturbed by the government</u>," *id.* at 17–18;

Ground Eight.   Counsel failed to enter into evidence a handwritten note Haislip claims was written by a witness and defendant in a related case;

Ground Nine.  Counsel failed to obtain copies of material related to the July 20, 2020, and November 2, 2020, traffic stops;

Ground Ten.  Counsel failed to obtain reports from two other jurisdictions in which he has convictions, which "hindered [Haislip's] defense in regards to establishing his <u>rightful offense category</u>," and his criminal history category should have been a Level I or II, *id.* at 19;

Ground Eleven.   Counsel "allowed the government without objection to stipulate [in the plea agreement] substantial assistance in favor of the government," *id.*;

Ground Twelve.  Counsel failed to move for a psychiatric exam. Haislip also challenges his sentence on other grounds, specifically:

Ground Thirteen.   Others involved in the drug offenses received lower sentences; and

Ground Fourteen.  The court did not adequately consider the fact that one of Haislip's robbery convictions would now be considered petty larceny, not

grand larceny, and the age of that conviction as mitigating factors in sentencing.

The government has moved to dismiss Haislip's motion. The matter is now ripe for decision.

## II.

## A.

I will begin by addressing Haislip's two claims not asserting ineffective assistance of counsel. The government argues such claims are barred by the plea agreement's collateral attack waiver. I agree and will dismiss Ground Thirteen and Ground Fourteen.[1]

A defendant may waive his right to attack his sentence collaterally if the waiver is knowing and voluntary. *United States v. Lemaster*, 403 F.3d 216, 220 (4th Cir. 2005). Therefore, if Haislip's waiver of his collateral-attack rights was knowing and voluntary, Haislip cannot challenge his sentence in a § 2255 motion.

Haislip does not allege that his plea agreement was unknowing or involuntary. Moreover, his claim that counsel convinced him to take the plea because he was advised that he would receive a life sentence otherwise, or to the extent that he claims

---

[1] The government also argues that Haislip procedurally defaulted Ground Thirteen by failing to raise the claim on appeal. Because I find that Haislip has waived his right to bring such a claim, I need not address procedural default.

that a mental evaluation could implicate the voluntariness of his collateral attack waiver, the claims fail. "A defendant's solemn declarations in open court affirming a plea agreement carry a strong presumption of verity." *Id.* at 221.[2] Therefore, courts are permitted to summarily dismiss a § 2255 motion that relies on allegations that contradict a defendant's sworn statements made during a Rule 11 colloquy, absent extraordinary circumstances. *Id.* at 221–22.

Here, the record shows that Haislip's plea was voluntary and knowing, and I find that no extraordinary circumstances exist. Haislip affirmed that no one made any promises to him or otherwise forced him to plead guilty. He stated that he was able to understand the proceedings and that the government's summary of the plea agreement, including the inclusion of the collateral attack waiver, was part of his agreement as he understood it. He affirmed he was pleading guilty to both Count One and Count Four because he was guilty of those offenses. He affirmed that he had had an adequate opportunity to discuss the plea agreement with his attorney. In addition, he reaffirmed that he did not want to withdraw his guilty plea at sentencing. Accordingly, I find to the extent that Haislip's allegations pertain to the voluntariness of the waiver, such allegations are "palpably incredibly" and "patently

---

[2]   I have omitted internal quotation marks, citations, and alterations here and throughout this opinion unless otherwise noted.

frivolous or false," *id.* at 221, and that Ground Thirteen and Ground Fourteen must be dismissed pursuant to the plea agreement's collateral attack waiver.[3]

B.

The remaining twelve grounds raised by Haislip encompass ineffective assistance of counsel claims.

Criminal defendants have a Sixth Amendment right to effective legal assistance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Ineffective assistance claims, however, are not lightly granted — "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id.* at 686.

To that end, a defendant must satisfy a two-prong analysis showing both that counsel's performance was deficient, and that the defendant was prejudiced by counsel's alleged deficient performance. *Id.* at 687. The first prong requires a defendant to show that counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. To satisfy the prejudice prong, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different. *Id.* at 694. In the context of

---

[3] Haislip does not contend, nor do I find, that his allegations constitute a cognizable claim of actual innocence such that enforcing the waiver "would result in a miscarriage of justice." *United States v. McKinney*, 60 F.4th 188, 192 (4th Cir. 2023).

a guilty plea, a defendant satisfies the prejudice prong by showing that but for counsel's errors, there is a reasonable probability that the defendant would not have pled guilty and would have insisted on going to trial. *Meyer v. Branker*, 506 F.3d 358, 369 (4th Cir. 2007). "This is an objective inquiry . . . and dependent on the likely outcome of a trial had the defendant not pleaded guilty." *Id.*

In Ground One, Haislip asserts that counsel was constitutionally ineffective by failing to file an appeal after being instructed to do so. Counsel must note an appeal when requested, even when the right to appeal has been waived. *United States v. Poindexter*, 492 F.3d 263, 273 (4th Cir. 2007). Nonetheless, even viewing the facts in a light most favorable to Haislip, Haislip cannot establish the *Strickland* prejudice prong. "[W]here the defendant unequivocally instructs an attorney to file a timely notice of appeal, prejudice is presumed because it results in the forfeiture of the appellate proceeding." *Id.* at 268. However, no such presumption of prejudice applies here because Haislip filed his own pro se motion, which I construed as a timely notice of appeal. The court of appeals subsequently appointed counsel and took up the appeal. Thus, trial counsel's alleged failure to file a notice of appeal did not result in a forfeiture of Haislip's appellate proceeding. Haislip cannot establish prejudice, so Ground One must fail.

In Ground Two, Haislip contends that trial counsel was constitutionally ineffective by colluding with the government and by lying to him to get him to accept

a so-called "illegal" plea agreement.  Specifically, Haislip alleges that counsel stated he would receive a life sentence if he did not accept the plea deal and that counsel failed to inform the court that the case agent "threatened" Haislip with a superseding indictment.  As an initial matter, Haislip affirmed under oath during the Rule 11 colloquy that no one had threatened or otherwise forced him to plead guilty, rendering these allegations "palpably incredible and patently frivolous or false." *Lemaster*, 403 F.3d at 222.

Furthermore, neither counsel's alleged statement that Haislip would receive a life sentence if he did not accept the plea deal, nor counsel's failure to inform the court about the government's so-called threat, satisfy the *Strickland* test.  An attorney's erroneous sentence estimation does not constitute constitutionally deficient performance.  *United States v. Whited*, No. 2:15CR00015-023, 2019 WL 553453, at *2 (W.D. Va. Feb. 12, 2019).  Moreover, the government is permitted to confront the defendant with the risk of more severe charges and punishment should he not plead guilty as part of the plea negotiation process.  *Bordenkircher v. Hayes*, 434 U.S. 357, 363–65 (1978).  Therefore, counsel's conduct does not fall below an objective standard of reasonableness and is not deficient under *Strickland*.

Ground Three and Ground Four involve Haislip's prior robbery convictions. Haislip contends that his attorney lied to him and conspired with the government by telling Haislip that the government could use the two prior convictions for the § 841

enhancement. He also claims that the plea agreement was invalidated by the government's motions withdrawing the Information pertaining to the § 841 enhancement and seeking to remove the prior conviction language from the Superseding Indictment. These claims are based on Haislip's belief that the government could not use convictions that would otherwise qualify as serious violent felonies because they were at least 15 years old.

As highlighted by the government, Haislip's attorney's position regarding the robbery convictions was not objectively unreasonable because of the alleged statute of limitations issue. The definition of "serious violent felony" incorporated into the enhancement statute, unlike the definition of "serious drug felony," does not require that a defendant was released from incarceration for the predicate offense within 15 years of the defendant's commission of the offense at issue. 21 U.S.C. § 802(57), (58). Thus, Haislip's plea agreement was not illegal, invalid, or defaulted simply because it included the older convictions and referenced the § 841 enhancement. Plea Agreement 4, ECF No. 55.

Moreover, Haislip cannot establish prejudice. He does not allege that he would not have accepted the plea agreement and proceeded to trial without the inclusion of the § 841 enhancement or but for his attorney's representations. Even if he had, the enhancement in no way affected his sentence. The government

dismissed the § 851 Information and no enhancement was applied.   Accordingly, both Grounds Three and Four must be dismissed.

In Ground Five, Haislip asserts that his counsel failed to investigate and call potential character witnesses for the sentencing hearing.   Haislip does not allege that he was prejudiced by such conduct, but more fundamentally, this claim, even viewed in a light most favorable to Haislip, is impermissibly vague.   He does not allege who these witnesses were or the content of the potential testimony.   Because "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation," United *States v. Dyess*, 730 F.3d 354, 359 (4th Cir. 2013), Ground Five is dismissed.

Ground Six and Ground Seven involve Count Four, Haislip's 924(c) conviction.   Haislip alleges that his attorney misinformed him about the elements of the 924(c) offense, in that he failed to explain that Haislip was not guilty of the offense because there were no facts showing he actively used or employed a firearm during the drug offense and that counsel misdirected Haislip to enter the plea regarding Count Four.   Haislip again fails to establish deficient performance under *Strickland*.   Contrary to Haislip's belief, the government was not required to prove facts showing that "use" under § 924(c) meant only active employment, as the statute now encompasses possession in furtherance of a drug trafficking offense.   *United States v. O'Brien*, 560 U.S. 218, 232–33 (2010).   Thus, counsel's alleged explanation

that the statute encompassed possession, any omission related to Haislip's misinterpretation of the law, or counsel's advice to plead guilty to such offense based on the facts, was not objectively unreasonable.   Moreover, Haislip agreed under oath that the facts related to the firearms from the July 2020 and November 2020 incidents were accurate, and he later reaffirmed his guilt to Count Four by pro se letter.   In light of these considerations, Grounds Six and Seven are dismissed.

In Ground Eight, Haislip alleges that his attorney failed to place into evidence a handwritten note purportedly from one of the government's witnesses and a defendant in a related case, Jayson Firestone, stating vaguely that Firestone lied to the government.   Haislip submits the note as Exhibit One to his motion.   It is unsigned and undated.   It does not address what specifically constituted a lie, and Haislip does not allege how those alleged lies related to his case.   Haislip does not allege if or when his attorney knew about the note.

Moreover, Haislip cannot establish *Strickland* prejudice.   The government relied on the testimony of a case agent at sentencing in presenting evidence about the applicable drug weight.   Haislip's involvement with Firestone was corroborated by Haislip's own Facebook messages with Firestone, as was the fact that both Haislip and Firestone were in the car during the July 2020 traffic stop.   Moreover, Haislip's counsel did object to the drug weight, arguing that Haislip "did not have knowledge or involvement with the vast majority of the drugs transported by

Firestone, certainly notice prior to May 2020." Sent'g H'rg Tr. 7, ECF No. 115.

Defense counsel pointed out that the case agent's testimony highlighted Firestone's credibility or lack thereof. *Id.* at 40. He argued that "[t]he base of that objection is that he did not, likewise, agree with the scope of the drugs or the allegation of the drugs by Mr. Firestone of that many kilograms. He does accept responsibility he had interactions with Mr. Firestone prior to the July 20th date, but his first interaction began in May . . . [a]nd he maintains that it was substantially less than the kilograms contemplated or stated by Mr. Firestone." *Id.* at 9–10. The court accepted the parties' agreement that Haislip's appropriate base offense level was 36, which was lower than what was originally indicated in the PSR. Haislip has not established that if counsel had moved for the admission of the vague, unsigned, unsworn note, his base offense level might reasonably have changed. Ground Eight is dismissed.

Ground Nine and Ground Ten involve allegations that Haislip's counsel failed to obtain certain materials, namely "relevant discovery" to help establish defenses regarding the July and November 2020 traffic stops and criminal history information from two state courts that he claims would have resulted in a lower criminal history category. As for Ground Nine, Haislip does not state what discovery materials counsel failed to obtain, rendering the claim impermissibly vague. *Dyess*, 730 F.3d at 359. Nor does Haislip allege, nor does the record suggest, that he suffered any prejudice — that he would have proceeded to trial but for counsel's alleged failure

to obtain these unspecified materials.   Moreover, Haislip affirmed that he was guilty of Counts One and Four, which encompassed the two traffic stops, so any allegations of potential defenses to such traffic stops are patently frivolous and false in that they directly contradict Haislip's sworn testimony.   *Lemaster*, 403 F.3d 216, 220.

As for Ground Ten, Haislip also cannot establish prejudice.   He asserts that his attorney failed to obtain criminal history information from courts in Martinsville, Virginia, and Guilford County, North Carolina.   He contends that he only served 43 days related to a North Carolina misdemeanor assault charge.   Haislip argues that but for counsel's failure to investigate this, his criminal history category would have been a Category I or II.

This argument is without merit.   First, it appears that Haislip might be confusing the 43-day sentence he believes was associated his Guilford County, North Carolina charge, with a South Carolina conviction that did involve a 43-day term of incarceration. PSR ¶¶ 50, 51, ECF No. 72.   However, even if he is not mistaken and his sentence for the North Carolina charge was only 43 days, his criminal history score would potentially only decrease by one point, from two points to one.   United States Sentencing Guidelines Manual (USSG) § 4A1.1. (2021) (assessing two points for prior sentences of imprisonment of at least sixty days and one point for others).   In this case, that would have resulted in a criminal history

- 20 -

score of five.  PSR ¶¶ 48, 49.  That would still result in a criminal history category of III and would not have affected his sentencing range.  USSG ch. 5, pt. A.

To the extent Haislip is asserting that the Martinsville, Virginia, sentences and/or the North Carolina sentence are too old to count for criminal history points,[4] this claim also fails.  Prior sentences exceeding more than one year and one month that were imposed within 15 years of the offense at issue count toward a defendant's criminal history score, as do prior sentences exceeding one year and one month when the defendant was incarcerated during any part of such 15-year period.  *Id.* § 4A1.2(e)(1).  Other prior sentences that were imposed within ten years of the instant offense are counted.  *Id.* § 4A1.2(e)(2).

Haislip commenced his relationship with Firestone in May 2020.  Sent'g Hr'g Tr. 8, 9, ECF No. 115.  He was first found in possession of drugs in July 2020.  *Id.* at 9.  The only Martinsville, Virginia, offense for which points were assessed, in paragraph 42 of the PSR, resulted in one year of custody, and the sentences were imposed more than 10 years prior to May 2020.  PSR ¶ 42, ECF No. 89.  However, the Sentencing Guidelines provide that terms of imprisonment associated with probation revocations are added to the original term and that such revocations may affect the applicable time period.  USSG § 4A1.2(k).  Haislip's probation was

---

[4] He states that the charges were "within the 10–15 year limitation," but in the next sentence argues that his criminal history category should have been one or two categories lower.  Def.'s Mot. 19, ECF No. 127.

revoked for the Martinsville conviction in 2009, and he was sentenced to four months' custody.  PSR ¶ 42, ECF No. 89.  That triggered the 15-year time period because his sentence for calculation purposes exceeded one year and one month, and the 2009 probation revocation fell within 15 years of 2020.

As for the North Carolina offense, he was originally sentenced in 2012 and probation was revoked in 2013.  The probation violation resulted in a custodial sentence of ninety days, triggering the two criminal history points.  USSG § 4A1.1.(b).  That sentence falls squarely within the 10-year time provided by the guidelines.  Haislip simply cannot establish how any alleged failure to obtain court records might reasonably have changed his criminal history scoring or the resulting category.  Haislip does not allege that any of the dates cited in the PSR are incorrect. Accordingly, he cannot show *Strickland* prejudice as a result of counsel's alleged failure to "obtain offense reports."  Def.'s Mot. 19, ECF No. 127.

In Ground Eleven, Haislip argues that counsel allowed the government to stipulate to substantial assistance.  He cites to page five of the plea agreement, which provides the standard provision that the government is under no obligation to make a motion for a reduction of sentence under the applicable statue, rule, and guideline provision even if the defendant fully cooperates with law enforcement.  Plea Agreement 5, ECF No. 55.  Haislip cannot establish deficient performance or prejudice as to this claim.  He states in his motion that he "expressed to counsel on

several occasions that he had zero desire to offer substantial assistance in favor of the government." Def.'s Mot. 19, ECF No. 127. Permitting the plea agreement to include such a provision does not fall below an objective standard of reasonableness on counsel's part. Furthermore, Haislip cannot establish that he would have proceeded to trial or that his sentence was adversely affected by the inclusion of the provision, in light of both Haislip's sworn statements and his allegation that he had no desire to cooperate anyway. Haislip's allegation that counsel did not object to the "points" in the "defaulted plea," Def.'s Mot. 20, ECF No. 127, is entirely unsupported by the record — the plea agreement added no "points" for any failure to provide substantial assistance.

Finally, Haislip asserts in Ground Twelve that counsel failed to move for a psychiatric exam. Haislip contends that at some unidentified time he told his attorney that he was not receiving his medications, that he functions at a low intellectual level, and that he suffered from attention deficit issues. In support of this claim, Haislip has submitted a 2018 psychological evaluation indicating that he was a good candidate for vocational rehabilitation services and finding that he had bipolar disorder, major depressive disorder, posttraumatic stress disorder, and cocaine use disorder. Def.'s Mot. Ex. 2, ECF No. 127-2.

This claim fails because Haislip has failed to establish a reasonable probability that if his attorney had obtained a psychiatric report, Haislip would have rejected the

plea agreement. *Hooper v. Garraghty*, 845 F.2d 471, 475 (4th Cir. 1988).  Moreover, Haislip's sworn testimony contradicts his claims regarding the necessity of a psychiatric exam.  He stated that he was taking his medications at the time of his guilty plea.  He stated that none of those medications affected his ability to understand the proceedings.  He did not report any other health problems that reasonably might have affected his ability to appreciate the proceedings.

Furthermore, the evidence Haislip submits with his motion does not support the need for a psychiatric examination.  Although the report indicates Haislip would benefit from vocational therapy and the existence of certain mental health issues, it does not suggest any reasonable possibility that he might have been incompetent at the time of his offense or that he might not have had the capacity to appreciate the proceedings.  In other words, counsel's performance was not constitutionally deficient because the record does not establish even the possibility of an insanity defense. *Id.* at 474–75.

## III.

For these reasons, the United States' Motion to Dismiss will be granted, and the Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, will be dismissed.  A separate final order will be entered herewith.

DATED:   July 12, 2023

/s/  JAMES P. JONES
Senior United States District Judge

- 24 -